Melvin Mad Plume
700 Conley Lake Rd
Deer Lodge, MT 59722

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION,

Melvin Lee Mad Plume JR, Petitioner, ) Cause No. _____

v.

Lake County Montana, Respondent,

) Petition for
) Habeas Corpus,
) 28, U.S.C. 2254,

I, Melvin Mad Plume JR, Am the petitioner in this cause, Pursuant to 28, U.S.C. section 2254, citing;
McGirt v. Oklahoma, 140 S.CT.2452, (2020)
"State of Oklahoma lacked jurisdiction to prosecute an enrolled member of the Seminole Nation who's crimes took place on the Creek Reservation because for purposes of the major crimes act, Land reserved for the Creek Nation since the 19th centry remained Indian Country under, 18 U.S.C.S. section 1153(a) And only the Federal Government could prosecute Indians for major crimes committed in Indian country, (2) once a reservation was established, It retained that status until Congress explicitly indicated otherwise, and Congress acting during the allotment era did not end the Creek Reservation, Nor were Historical practices and demographics enough by themselves to prove disestablishment."
Montana has always been a disclaimer state, Congress has never revoked Article 1, Compact with the United States, which reads, "All provisions of the enabling act of Congress (approved February 22, 1889, 25 Stat.676) as amended and of ordinance no.1 appended to the Constitution of the State of Montana and approved February 22 1889. Including the agreement and declaration that all lands owned or held by any Indian or tribes shall remain under the absolute Jurisdiction and control of the Congress of the United States, Continue in full force and effect until revoked by the consent of the United States and the people of Montana."
From it's inception public law 280 engendered criticism from both the State and the Tribes, The State Government's resented the fact that they were given the duty of law enforcement without the means to pay for it. Congress neither appropriated funds for that purpose nor rendered Indian lands taxable by the States, The ultimate result of these criticism's was a group of amendment's to public law 280, That were passed as part of the Indian Civil Right's Act of 1968. These amendments permitted States to retrocede jurisdiction to the Federal Government, and also provided that no States in the future could assume jurisdiction without Tribal consent.
Public Law 280 should of never been allowed on the Flathead Indian Reservation. Because it was a non-Indian living on or near the Reservation who believed that law enforcement on the Indian Reservation had broken down, and urged the State to introduce public law 280. See, Goldberg, public law 280, The limits of State jurisdiction over reservation Indians, 22 U.C.L.A.Rev.535,541,(1975)

Now that I think about it, I am a little worried about the lawlessness in some police departments around this country. Maybe we can introduce some legislation to allow the Native American Indian to Police those precincts. Perhaps that would reduce the minority's from being hurt, or in some cases, killed.
As a disclaimer State Congress expressly gave it's consent in section 6of public law 280 "to the people of any state to amend "where necessary", there State Constitution or existing statutes as the case may be to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this act, public law 280 section 6,67 Stat.588,590,(1953) Perhaps the greatest criticism of public law 280 was that it permitted the states to assume jurisdiction without the consent of the concerned tribes. Congress reacted to this criticism in the Indian Civil Right's Act of 1968 by amending public law 280 to provide that no State could assume jurisdiction thereafter without the consent of the tribe or tribes concerned, 25 U.S.C.A. section 1321(a)1322(a) this consent may be obtained only by a majority vote of the adult Indians of the tribe in a special election. The Montana Legislature passed Senate bill 310 in May of 2017, Withdrawing felony jurisdiction from the State of Montana. In 2023 The Lake County commissioners held a special election to officially withdraw from public law 280. Pursuant to the Indian Civil Rights Act of 1968. Now that the tribe has passed Senate Bill 310 asking the state to relinquish criminal jurisdiction on the Flathead Indian Reservation, Now that the Lake county commissioners voted to abolish public law 280, The tax payers refused to fund the Lake county New jail, The tribe refused to Fund a new jail, The Governor only allocated Lake County $1.00 (one dollar)
It's obvious everyone wants Lake county to leave. If the State attempts to remain on the Flathead reservation, Pursuant to the Indian Civil Right's Act of 1968, Let the Indian people vote and see if The Indian people want the state of Montana to remain on The Reservation. It is the Indian people who should of been allowed to vote in 1964, Not the Montana legislature. The legislature are not enrolled Native American members of the Flathead Indian reservation. Public law 280 has always engendered alot of criticism from the Native American Indian, However Congress in it's 1968 amendments provided a method for the States to return public law 280 jurisdiction to the federal government. The United States was Authorized to accept a retocession by any state of all or any maesure of criminal jurisdiction acquired by the state pursuant to public law 280,25 U.S.C.A. section 1323(a) The President thereupon designated the secretary of the interior to exercise the discretionary power of the United States to accept retrocession of jurisdiction, Exec.order,11435,33,Fed.reg.17339(1968)see also;
State v. Wabashaw,740,n.w.2d.583,(Neb.2007)
Similar to Montana, see; United States v. Lawrence,595,f2d.1149 (9th cir.1979)A different question arose when Nebraska by Legislative act offered to retrocede jurisdiction over the Omaha and Winnebago Reservations, The Secretary accepted the retocession of the Omaha Reservation, But not the Winnebago, Nebraska contended that the retrocession was invalid because the secretary acceptance

deviated from the states offer,The contention was rejected and the retrocession of jurisdiction over the Omaha reservation was held valid,see;Omaha Tribe of Nebraska v. Village of Walthill 460,f2d,1327(8th Cir.1972)

## Conclusion

In 2017,State Senator Lea Whitford introduced Senate Bill 310, Which passed into law in May of 2017.Which legally withdraws The Flathead Indian Reservation from State Felony jurisdiction Misdemeanor jurisdiction was withdrawn in 1993.The Lake County commissioners held a vote in December of 2023 to withdraw from public law 280,The tax payers denied a bond issue to build a new jail,The Indian people refused to fund a new jail,The Governor of this State only appropriated $1.00(one dollar)for Lake County It's obvious that everyone wants the State of Montana to leave the Flathead Indian Reservation.
In 1855,The Hellgate treaty was held with the Flathead Indian people,Giving the Flathead people the land that is now the Flathead reservation. Pursuant to Article 1,"Compact with the United States"All provisions of the enabling act of Congress (approved February 22,1889,25,Stat.676)As amended and of ordinance no.1 appended to the Constitution of the State of Montana and approved February 22,1889,Including the agreement and declaration that all lands owned or held by any Indian or Indian tribes shall remain under the absolute jurisdiction and control of Congress of the United States,Continue in full force and effect until revoked by the consent of the united States and the people of Montana"
With respect to the term,"people of Montana",Since the Indian Civil Right's Act of 1968,The term has been changed significantly to"The adult people of the Flathead Indian Reservation"It is the Indian people who should of made the decision in 1964 to allow Public law 280,Not the Montana Legislature. It was a non-Indian who decided That the Flathead Indian people needed public law 280 It was a non-Indian Montana Legislature who voted to allow public law 280.It should have been the Indian people who made this decision for the Indian people.
When the Indian people held and agreed to the Hellgate treaty of 1855,The Indian people believed that this land will always remain theirs,not to be shared with non-Indian by introducing public law 280.By a non-indian.see; Confederated Salish and Kootenai Tribes v. Namen D.C. Mont.1974,380,F.Supp.452,Affirmed 534,f2d,1376, Certiorari denied,97,S.CT.336,429,U.S.929,50,L.ED.2d.300.
"Doubtful expressions in Indian treaties must be resolved in favor of the Indians"
see also;Confederated Salish and Kootenai tribes of the Flathead Reseravation Montana v. U.S.(1967)181,C.T.CL.739.
"The words of an Indian Treaty and legislation dealing with Tribal property should be interpreted hospitably to the Indians if that is possible"
The Indian people were promised by treaty,That the lands given by way of the Hellgate treaty of 1855,Pursuant to Article 6, To The United States Constitution,"This constitution,and the laws of the United States which shall be made in pursuance thereof;

And all treaties made, or which shall be made under the authority of the United States, Shall be the Supreme law of the Land."
The Indian people of the Flat head Indian reservation contend that with respect to the introduction of public law 280, that this law was never properly introduced, see; Lozeau v. Anciaux, 397 Mont. 312 (2019) "Governor Babcock's 1965 proclamation was issued beyond the 60-day timeframe" Had the tribe made this procedoral error, the State would of used this to justify their illegal assumption of jurisdiction. The provisions of public law 280 for the assumption and retrocession of jurisdiction played what can only be described as a bizarre part in, Three affiliated tribes of the Fort Berthold reservation v. Wold Engineering, 467, U.S. 138, (1984) In that case the State of North Dakota apparently in reliance on public law 280 attempted to disclaim jurisdiction over actions brought in state court by tribes or tribal Indians, Unless the tribe consented generally to State jurisdiction, The Supreme court understandably held that State court's had jurisdiction over such cases before public law 280 was passed and that in essence public law 280 simply had nothing to do with the case, The court nevertheless remanded to the state supreme court because that court's jurisdictional ruling might have been based on erroneous views that public law 280 governed. On remand, The Supreme Court adhered to the view that the State court's had no jurisdiction, It held that, Under State law, such cases could be brought only if the tribe consented to full State jurisdiction on it's reservation. And if the tribe waived it's Sovereign immunity. The United States Supreme court then reversed, Fort Berthold II, 476,
The Hellgate treaty of 1855, Article 1, "The said Confederated Tribe of Indians hereby cede, Relinquish, and convey to the United States all their right, title, and interest in and to the country occupied or claimed by them, bounded and described in the treaty"
Pursuant to Rule 8, of the federal rules of civil procedure, The petitioner has provided a complaint that states a claim for relief, asking this court to vacate his sentence by Lake County. as Lake County has never legally introduced public law 280 to the Flat head Indian reservation. Under Fed.R.Civ.P.8(a)(2) This complaint contains factual matter leaning on the 1855 Hellgate treaty that the Flathead Indian reaservation was meant for the Indian people to enjoy, Not for public law 280 to allow non-Indian to take advantage of, The right decision is to vacate the sentence which Lake County handed down.

Dated this 09, Day of May, 2023.

*[signature]*